*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 16, 2014                516695
_____

In the Matter of SUMARIA D.,
    Alleged to be a Neglected
    Child.

BROOME COUNTY DEPARTMENT OF
    SOCIAL SERVICES,                      MEMORANDUM AND ORDER
                    Respondent;

MADELYN D. et al.,
                    Appellants.
_____

Calendar Date:   September 4, 2014

Before:  Peters, P.J., Stein, Garry, Lynch and Devine, JJ.

_____

        Alena E. Van Tull, Binghamton, for Madelyn D., appellant.

        Teresa C. Mulliken, Harpersfield, for Direll D., appellant.

        Philomena Stamato, Broome County Department of Social
Services, Binghamton, for respondent.

        Christopher A. Pogson, Binghamton, attorney for the child.

_____

Stein, J.

        Appeal from an order of the Family Court of Broome County
(Connerton, J.), entered April 11, 2013, which, in a proceeding
pursuant to Family Ct Act article 10, granted petitioner's motion
for summary judgment adjudicating respondents' child to be
derivatively neglected.

Respondents are the married parents of seven children, the youngest of whom — Sumaria D. (born in 2012) — is the subject of this proceeding. At the time of Sumaria's birth, respondents' six other children had been removed from their custody as a result of, among other things, respondents' history of mutual acts of domestic violence committed in the children's presence.[1] Within days of Sumaria's birth, Family Court granted petitioner's pre-petition application for temporary removal of the child from respondents' custody. One week later, petitioner commenced this proceeding pursuant to Family Ct Act article 10, alleging that Sumaria had been derivatively neglected based upon respondents' neglect and permanent neglect of their other children. Petitioner further alleged that, among other things, respondents had failed to adequately address their domestic violence issues through available preventive services as required by prior dispositional orders.

In January 2013, following a Family Ct Act § 1027 hearing, petitioner moved for summary judgment against both respondents on the neglect petition, as well as for an order dispensing with its obligation to make reasonable efforts to reunite Sumaria with respondent Direll D. (hereinafter the father). Family Court denied the latter request,[2] but otherwise granted the motion for summary judgment and entered a finding of derivative neglect against respondents, who now appeal from that order.

---

[1] Respondents' five oldest children (born in 2003, 2004, 2005, 2006 and 2007) were adjudicated to be neglected in 2008 and permanently neglected in December 2011, and respondents' parental rights as to those children were terminated (Matter of Madelyn D. [Direll D.], 112 AD3d 1165 [2013]). Respondents' sixth child, Xiomara D. (born in 2010), was adjudicated to be derivatively neglected in 2010 (Matter of Xiomara D. [Madelyn D.], 96 AD3d 1239 [2012]), and respondent Madelyn D. has since judicially surrendered her parental rights as to that child.

[2] Petitioner has not appealed from that part of the order that denied such request.

We affirm.  "[P]roof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of . . . the respondent" (Family Ct Act § 1046 [a] [i]).  "Derivative neglect is established where the evidence demonstrates an impairment of parental judgment to the point that it creates a substantial risk of harm for any child left in that parent's care" (Matter of Xiomara D. [Madelyn D.], 96 AD3d 1239, 1240 [2012] [internal quotation marks and citations omitted]; accord Matter of Karm'Ny QQ. [Steven QQ.], 114 AD3d 1101, 1102 [2014]; Matter of Alyssa WW. [Clifton WW.], 106 AD3d 1157, 1158 [2013]; see Matter of Michael N. [Jason M.], 79 AD3d 1165, 1167-1168 [2010]).  In this regard, "[a] prior determination [of neglect] should be sufficiently proximate in time to reasonably conclude that the problematic conditions continue to exist, but there is no bright-line, temporal rule beyond which we will not consider older child protective determinations" (Matter of Ilonni I. [Benjamin K.], 119 AD3d 997, 998 [2014] [internal quotation marks and citations omitted]).  "Although it is a drastic procedural device, Family Court is authorized to grant summary judgment in a neglect proceeding where no triable issue of fact exists" (id. at 997 [internal quotation marks and citation omitted]; accord Matter of Alyssa WW. [Clifton WW.], 106 AD3d at 1158; see Matter of Jadalynn HH. [Roy HH.], 93 AD3d 1112, 1113 [2012]; Matter of Quinton GG. [Jessica HH.], 82 AD3d 1557, 1558 [2011]).

Here, the papers proffered by petitioner in support of the motion for summary judgment included, among other things, the prior neglect orders, which were based upon respondents' admissions to mutual acts of domestic violence in the children's presence, at least one of which required respondent Madelyn D. (hereinafter the mother) to seek medical treatment at a local hospital and resulted in physical injury to the father as well. The parties admitted to engaging in "continuing and escalating" domestic violence, and the father also admitted to violating a prior court order.  The parties' conduct led to the termination of the father's parental rights as to five of their seven

children in 2012,[3] following the revocation of a suspended judgment, in addition to the finding of derivative neglect as to Xiomara. Further, it is evident from the record that neither parent has demonstrated the ability to appreciate the severity of the domestic violence and the safety concerns for their children raised thereby. Notably, just two weeks after the May 2008 neglect adjudications, there was a reported incident of domestic violence that involved the father wielding a screwdriver against the mother. Petitioner's caseworker also described two reported incidents of domestic violence and/or aggressive acts by the father toward the mother in April 2011 and July 2011, respectively, one of which resulted in the father being criminally charged.

Notably, petitioner's submissions in support of its motion also establish that respondents have failed either to undertake or to successfully complete certain court-ordered services. Moreover, despite the existence of a no-contact order of protection, respondents continued to have regular contact with one another, and Sumaria apparently was conceived during the pendency of that order. Under these circumstances, we find that petitioner made a prima facie showing that the conditions that gave rise to the previous neglect findings were not so remote in time as to preclude a finding of derivative neglect and, in fact, continue to exist (see Matter of Ilonni I. [Benjamin K.], 119 AD3d at 998; Matter of Xiomara D. [Madelyn D.], 96 AD3d at 1240; compare Matter of Jamakie B. [Gwendolyn J.], 119 AD3d 939, 940 [2014]). Respondents' contentions in opposition to petitioner's motion that, among other things, they have completed some therapeutic services, are insufficient to raise a material question of fact as to the continued existence of the circumstances that gave rise to the prior neglect adjudications (see Matter of Xiomara D. [Madelyn D.], 96 AD3d at 1240). Accordingly, petitioner established its entitlement to judgment as a matter of law on the issue of respondents' derivative neglect of the child.

---

[3] The mother executed a judicial surrender of the five older children.

As to the mother's assertion that Family Court should not have considered her hospital records – which petitioner improperly obtained without the mother's authorization or a subpoena – we note that, while the physician/patient and related privileges do not bar the admissibility of such records (see Family Ct Act § 1046 [a] [vii]), the record does not reflect that they were obtained pursuant to a subpoena, as required (see Family Ct Act § 1038 [a]).[4]  We do not condone petitioner's failure to follow the statutory protocol for obtaining the mother's records.  However, given that the information contained in the records was offered to prove a fact – that respondents were residing together before Sumaria's birth – that is readily gleaned from other evidence, Family Court's consideration of such records is not a basis for reversal.  To the extent not specifically addressed herein, respondents' remaining contentions have been considered and found to be lacking in merit.

Peters, P.J., Garry, Lynch and Devine, JJ., concur.


ORDERED that the order is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court

---

[4]  Petitioner's reliance upon Social Services Law § 415 is misplaced, as that statute pertains to a report made by a mandated reporter that results in an investigation of child abuse or maltreatment, and there is no indication in the record here that the records in question were obtained by petitioner as a result of a report made by the hospital.